## In re STANDARD POWER & LIGHT CORPORATION.

## In re SECURITIES AND EXCHANGE COMMISSION.

### Civ. A. No. 271.

District Court, D. Delaware.

Jan. 22, 1943.

John F. Davis, Roger S. Foster, and David K. Kadane, all of Philadelphia, Pa., for Securities & Exchange Commission.

Howard Duane, of Wilmington, Del., and Royal E. T. Riggs and H. Preston Coursen (of Seibert & Riggs), all of New York City, for Standard Power & Light Corporation.

Herbert H. Ward, Jr., of Wilmington, Del., and Ralph Montgomery Arkush and Joseph J. Bryer, both of New York City, for Irma W. Jackson, petitioner for intervention.

Edgar Schoen, of Chicago, Ill., and Maurice J. Dix, of New York City, for Cora Homewood and others.

Caleb S. Layton (of Richards, Layton & Finger), all of Wilmington, Del., for H. M. Byllesby Co.

S. Samuel Arsht (of Morris, Steel, Nichols & Arsht), all of Wilmington, Del., for Bancamerica-Blair Corp.

LEAHY, District Judge.

On June 19, 1942, the Securities and Exchange Commission entered an order under Section 11(b) (2) of the Public Utility Holding Company Act of 1935, 11 U.S.C.A. § 79k(b) (2), requiring Standard Power and Light Corporation (referred to herein as "Standard Power") to liquidate and terminate its existence. No appeal was taken from this order and the appeal period provided in Section 24(a), 11 U.S.C.A. § 79x (a), has now elapsed. The Commission brought the matter before this court on October 8, 1942, under the provisions of Secs. 18(f), 11(d) and 25 of the Act, 11 U.S.C.A. §§ 79r(f), 79k(d), 79y, asking the court to take exclusive jurisdiction of Standard Power and its assets and to enjoin all persons from taking any action, including the

commencement or prosecution of any action, suit or proceeding before any tribunal other than the Commission which will interfere or tend to interfere with the winding up of Standard Power under the supervision of the Commission.

The present action is the first time the Commission has sought the aid of a United States District Court in the enforcement of its "death sentence" prior to the presentation and approval of a plan of liquidation thereunder. It was instituted because, four days after the Commission's order was entered, petitioner for intervention here filed her bill in the Court of Chancery of the State of Delaware for the appointment of a receiver to liquidate and wind up Standard Power under state supervision. Upon application of the Commission on October 8, 1942, a temporary injunction against any action for liquidation other than under supervision of the Commission was issued by this court.

The present matter arises on the Commission's motion to make the temporary relief permanent.

Three separate challenges were made to this court's jurisdiction. First, Irma Jackson, complainant in the State Chancery action, filed her petition here for intervention, admitting the jurisdiction of this court to enjoin her in her state action and to take custody of the assets of Standard Power only if I would grant her prayer for further relief, i. e., the appointment of a trustee or receiver; but if such relief is not granted, then she presses the question of jurisdiction. Secondly, plaintiffs in Homewood et al. v. Standard Power and Light Corporation, Civil Action No. 229, a stockholders' derivative action, now pending and untried in this court, sought consolidation with the present cause and argued that the court could obtain jurisdiction of the present action only by such consolidation.[1] And, thirdly, Standard Power, in its answer, denied the court's jurisdiction generally to grant the requested relief, and also denied that it is a registered public utility holding company within the meaning of the Act.

Although, since the argument on December 1, 1942, counsel for the plaintiffs in the Homewood action has withdrawn his challenge to jurisdiction, and although Standard Power has veered from right to extreme left by concurring with the Commission on all of the issues raised by it, the remaining conditional challenge by petitioner for intervention, plus the complete absence of precedent on the question, impel me to examine the jurisdictional question first.

The Commission asks the court to "take exclusive jurisdiction and possession of Standard Power and the assets thereof, wherever located * * *" and to exercise this jurisdiction in the first instance by issuing the injunction heretofore mentioned. The Commission relies upon Sec. 11(d) of the Act as the primary source of the court's jurisdiction. Petitioner for intervention argues that this section cannot become operative until the expiration of the one year period—from June 19, 1942—given by Sec. 11(c) for compliance with a Commission order; or, in other words, the Commission has no right to compel anyone to comply with an order until such time as compliance is due. Accordingly, she argues, the jurisdiction of the court under Sec. 11(d) has not yet come into existence.

The parties have missed the true source of the court's jurisdiction. I find it in Section 18(f), which authorizes the Commission to bring an action in the proper district court of the United States "whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule, regulation, or order thereunder * * *". The Commission has brought its action here on the ground that petitioner Jackson has violated an order of the Commission by bringing her bill for winding up and liquidation under the supervision of the Delaware Court of Chancery.[2]

What, then, is the effect and relevance of Sec. 11(d)? I believe it is simply to extend the powers of the court whose jurisdiction is invoked under Sec. 18(f) to enforce compliance with or enjoin violation of an order issued under Sec. 11(b). "In any such proceeding," the court is authorized to (1) take exclusive jurisdiction and possession of the company or compa-

---

[1] Counsel for H. M. Byllesby Co. and Bancamerica-Blair Corp. appeared at the argument and opposed the consolidation.

[2] The pleadings in this case do not affirmatively disclose that it does "appear to the Commission" that this is the fact. I infer this from the complaint, however, and waive the formal defect. Cf. Nemser v. Aviation Corp., D.C., 47 F. Supp. 515.

nies and the assets thereof, wherever located; and (2) appoint a trustee to hold and administer the assets, and, with approval of the court, to dispose of any or all of them.

The first sentence of Sec. 11(d) is not, as the parties apparently assume, the primary source of the court's jurisdiction; it is merely declaratory that Sec. 18(f) is applicable to orders under Sec. 11(b). Accordingly, I need not construe the words, "to enforce compliance with any order issued under subsection (b)", standing alone. Read in conjunction with Sec. 18(f), they manifestly include a case where any person, whether or not a party to the proceedings before the Commission, engages in acts which, in the Commission's opinion, will tend to interfere with the carrying through of its "death sentence" order, issued under Sec. 11(b).

I conclude that this court has jurisdiction in the cause by virtue of Sec. 18(f) of the Act and has power to grant the ancillary remedies permitted by Sec. 11(d).

I. *Intervention.* Preferred stockholder, Irma Jackson, seeks intervention under Rule 24(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that her class, the preferred stockholders, are not otherwise represented. It may be that Standard Power's present management are the nominees of the common stockholders who no longer have any equity in the assets of the corporation and to this extent any plan of liquidation submitted by them might attempt to trespass on intervenor's rights.[3] It is entirely proper that someone should be a party to these proceedings to represent and protect the interests of her class. 2 Moore's Federal Practice, pp. 2401, 2402, and Moore & Levi, Federal Intervention, 45 Yale L.J., 565 et seq.

Intervention is granted.

II. *Remedies requested.* This brings me to the specific remedies requested by the various parties.

(A) Permanent Injunction. After the argument on December 1, 1942, I continued in effect the temporary injunction. It enjoins all security holders of Standard Power and all other persons from interfering with or hindering in any way compliance with the Commission's order by the commencement or prosecution of any action for appointment of a trustee or receiver or for liquidation of Standard Power otherwise than by application to the Commission or to this court. The present application of the Commission is to make this injunction permanent.

The Public Utility Holding Company Act of 1935 was the outgrowth of an investigation by the Federal Trade Commission which reported that the utility industry in this country was in the hands of a number of holding companies, all of which had ponderously top-heavy and intricate corporate structure. Congress determined that these creatures should be regulated and simplified. It directed this task to the Securities and Exchange Commission, commanding it to designate who were the public utility holding companies and to require them to register by filing elaborate registration statements. The Commission was further authorized, by its appropriate rules, regulations and orders, to oversee extensions of credit, declarations of dividends, solicitation of proxies, contracts, and retirement and redemption of shares. Most dramatic of the powers given the Commission with respect to such registered companies are those under Section 11 which require the reorganization or dissolution and liquidation of any such company or any of its subsidiaries, in order to remove undue complexity of corporate structure or unfair or unequitable distribution of voting power.[4]

Here, the Commission exercised the power thus assigned to it under Sec. 11 by ordering Standard Power to cease functioning as a public utility holding company, to liquidate its holdings as such, and to submit to the Commission a proposed plan of liquidation.

The question I face is whether a district court should protect the Commission's exercise of its powers by enjoining a preferred stockholder who seeks to invoke the process of a state chancery court to liquidate a company whose corporate functions and purposes have now failed by virtue of

---

[3] In a related field Consolidated Rock Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, and Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, evaluate the importance of junior stock where little, if any, equity is behind the common shares.

[4] In The North American Company v. Securities & Exchange Commission, 2d Cir., 133 F.2d 148, the section was held safe from constitutional attack.

the Commission's order that it cease operating as a public utility holding company.

 I have little difficulty with the question of the power of this court to exercise its protective sanctions as an aid to the Commission in carrying out the legislative fiat. Cf. Securities & Exchange Commission v. Fiscal Fund, Inc., D.C., 48 F.Supp. 712. Furthermore, I believe it was the intent of Congress that the Commission should carry through to completion any valid orders issued by it under Sec. 11(b) because:

(1) The Act provides for the regulation by the Commission of registered holding companies and includes a comprehensive and economical scheme for the equitable integration, liquidation or reorganization of such companies under the supervision of the Commission and, in proper cases, of a United States Court, in accord with congressional standards for the protection of the public, investors and consumers. Administration of the Act requires a reorganization of a large industry in this country involving some 15 billions of dollars of assets. Congress realized that the task facing the Commission entailed heavy responsibilities. The Act sets up extensive machinery which makes the Commission the repository of a vast amount of information concerning the subject companies, their businesses and affairs.

(2) The liquidation of such companies creates special problems growing out of prolix intercorporate relations. Security holders are frequently scattered all over the country. The Commission is charged, as an administrative agency, with the duty and responsibility of investigating whether any proposed liquidation is fair and equitable to creditors and stockholders. The essential purposes of the Act will be aborted if any stockholder may substitute at random some other procedure for the machinery provided by Congress. While apposite machinery is available in the state court of chancery in Delaware to liquidate Standard Power, the utilization of such machinery would, it seems to me, invite confusion in administration, and delays would occur as a result of a state and federal jural dichotomy, followed by a lack of economies. The Commission has not sought the aid of the state tribunal, and, as we are dealing with an instrumentality of interstate commerce in a field in which Congress has

spoken, state laws must yield to paramount federal authority; and

(3) I reject the intervener's argument that Sec. 265 of the Judicial Code, 28 U.S. C.A. § 379, prohibits the granting of the sought injunctive relief. Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967, fixes the ambit within which a federal district court may function as it looks to restrain a state proceeding. It seems to me that as the means of liquidation established and recognized by the Act are exclusive, the power of this court to issue the permanent injunction falls within the penumbra of the exceptions, noted by Mr. Justice Frankfurter in the Toucey case, where federal courts may enjoin state proceedings.

 I conclude that this court should not allow the public duties of the Commission under the Act to be thwarted, or the safeguards of the Act to be circumvented. I find it was the intention of Congress that the Commission should have complete custody of any public utility holding company affected by the Act, with a right to enlist the aid of any court, state or federal, at its option,[5] to enforce its orders. Hence, the Commission's order of June 19, 1942, directing Standard Power to present its plan of liquidation to the Commission was, in truth, an order to liquidate under Commission supervision and in no other manner. The institution of the Delaware Chancery proceedings brought intervener within the class of "any person * * * engaged in any act * * * which constitutes a violation of the provisions * * of any order" issued by the Commission.

I shall make the injunction permanent as to intervener.

 (B) Taking exclusive possession of Standard Power's assets. The court is authorized by Sec. 11(d) of the Act and is now requested by the Commission "to such extent as it deems necessary for purposes of enforcement of such order [authorized by Sec. 18(f)], to take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located * * *". While the Commission requests the court to take exclusive possession of Standard Power's assets, it anomalously makes no application for the appointment of a trustee to administer those assets, although Sec. 11(d) specifically authorizes the court to appoint a trustee

---

[5] Sec. 25 of the Act.

"* * * to hold or administer under the direction of the court the assets so possessed." In fact, the Commission asks me not to exercise the statutory power of appointment of a trustee.

I do not believe it necessary for the court to take possession of the assets at the present time. In the custody of Standard Power, they are under the constant vigilance of the Commission and subject to its controls. Sole violator or the incipient violator of the Act, so far as has been disclosed to me, is Irma W. Jackson, who is a party to this cause and obviously within the scope of the proposed injunction. If the Commission or Standard Power desire me to take possession of the assets so that the injunctive process of this court may reach out and become operative as against all persons on the theory that the res is in custodia legis, then application should be made for a statutory trustee authorized and intended by Sec. 11(d) to hold and administer such assets.

(C) Appointment of a trustee. As I have refused to take possession of the assets in order to enlarge the court's injunctive process, there has been no other showing for need of a trustee to protect such assets.

(D) Appointment of a receiver. This is the application of the intervener on the ground that under the authority of Case v. Los Angeles Lumber Products Co., and Consolidated Rock Co. v. Du Bois (see footnote 3, supra) and allied decisions, the common stock has no proprietary interest in the liquidation proceedings and, as the present management are the mere nominees of the junior stock, an independent receiver should be appointed to represent the senior classes.

Such a receiver would, of course, supplant the present directors and would function merely as a liquidating receiver. A court of equity has no power to appoint a liquidating receiver for a solvent corporation, independent of statute, except as ancillary to some main relief. Orth v. Transit Investment Corp. et al., 3rd Cir., 132 F.2d 938; and Securities & Exchange Commission v. Fiscal Fund, Inc., supra. Intervener's application is by cross-petition to obtain relief wholly independent from the main injunctive relief sought by the Commission. In fact, it is presented by the very party against whom the injunction will be primarily directed. If intervener concludes that she and the members of her class are slighted in any plan filed pursuant to the Sec. 11(b) order of June 19, 1942, there are remedies available, if she elects to seek them. In the light of these circumstances, I presently refuse the prayer of intervener's cross-petition for the appointment of a receiver.

Let an order be submitted in conformity with the foregoing.