## PHILLIPS v. SECURITIES AND EXCHANGE COMMISSION.

### No. 261, Docket 20051.

Circuit Court of Appeals, Second Circuit.

July 10, 1946.

Randolph Phillips, of New York City, petitioner, pro se.

W. Richard Nowlin, Sp. Counsel, Public Utilities Division, Securities and Exchange

[6] Ibid. p. 70.

[7] Senate Report No. 742, 74th Cong. 1st Sess., May 13, 1935, p. 4.

Commission, of Philadelphia, Pa. (Roger S. Foster, Sol., and Morton E. Yohalem, Counsel, Public Utilities Division, Securities and Exchange Commission, both of Philadelphia, Pa., on the brief), for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The order in issue here is one of the many issued by the Commission in its simplification of the United system. Cf. Phillips v. S. E. C., 2 Cir., 153 F.2d 27, certiorari denied 66 S.Ct. 1350. Niagara Hudson Power Corporation is a subsidiary of the United Corporation, a registered holding company under the Public Utility Holding Company Act of 1935; and Buffalo, Niagara & Eastern Power Corporation (BNE) is a subsidiary of Niagara Hudson. On June 19, 1944, the Commission issued an order under § 11(b) (2) of the Act, requiring BNE to substitute one class of common stock for several outstanding issues, including its $1.60 Cumulative Preferred Stock. See Holding Company Act Release No. 5115. For the stated purpose of complying with this order the two companies filed plans, which, so far as here material, called for the consolidation of BNE and three of its subsidiaries in a company referred to as "the Operating Company"; the contribution by Niagara Hudson to BNE of $63,000,000, to be obtained by the former from treasury cash, the sale of portfolio securities, and a bank loan in the amount of $40,000,000; the use of these funds by BNE for the retirement of its $1.60 Cumulative Preferred Stock; and the issuance to Niagara Hudson of all but 6¾ shares of the common stock of the Operating Company.

The attitude of the Commission towards these features of the plans is shown by the following extracts from its lengthy opinion of September 27, 1945, Holding Company Act Release No. 6083:

"Although the proposed consolidation, and the retirement of BNE's $1.60 Preferred Stock, will effectuate compliance with our Order of June 19, 1944 directing a recapitalization of BNE, the injection of the $40,000,000 of indebtedness in the security structure of Niagara Hudson (which is in effect a substitution of a debt for a large portion of BNE's preferred stock) introduces a new complexity in the structure of the system. In addition, the retention by Niagara Hudson of its interest to be acquired in the consolidated company perpetuates pyramiding[1] in contravention of the provisions of Section 11(b) (2) of the Act.

"We believe these circumstances and the contingencies attending the proposed indebtedness and other unresolved questions pertaining to the corporate structure of the Niagara Hudson system make it impossible for us to find the plans necessary to effectuate the provisions of Section 11(b) of the Act and warrant our withholding approval of the plans before us, unless the plan of Niagara Hudson makes appropriate provision for the disposition of its interest in the consolidated company. * * *

"Under all the circumstances, we have concluded that the amended plans do not warrant our approval unless the plan filed by Niagara Hudson is appropriately amended to provide, as an integral part thereof and as a specific factor underlying our approval of the amended plans, that Niagara Hudson will dispose of all of its interests, direct or indirect, in the Operating Company and all the subsidiaries thereof in an appropriate manner not in circumvention of the applicable provision of the Act or the Rules thereunder within one year from the effective date of the proposed consolidation unless such period of time is extended or the above disposition requirements are modified or altered by our further order upon application and appropriate showing. In the event that such consolidation does not become effective within thirty days after the entry of our order approving the amended plans, then said one-year period shall commence thirty

---

[1] Here a footnote to the opinion pointed out that the Operating Company would still be a holding company, having three direct and three indirect subsidiaries, and that with Niagara Hudson and United there would still be five tiers of companies.

days after the entry of our Order. If the plan is amended in this respect and in the other respects indicated we find the proposed plans necessary to effectuate the provisions of Section 11(b)."

Thereafter the companies filed the required amendments; and on October 4, 1945, the Commission made its order of approval. It is this order which petitioner seeks to have reviewed here. He claims to be aggrieved as a stockholder of Niagara Hudson and derivatively · as a stockholder of United Corporation. He does not attack the entire order, but challenges only those parts which allow Niagara Hudson at least a year, and possibly more if an extension of time is granted, for divestment of its interest in · the consolidated company and approve its bank loan of $40,000,000. He puts his grievance in his brief thus: "There is no necessity to brief the argument in this case at length. The Commission admits the illegality of its order in the following words," quoting the first paragraph of the Commission's opinion which we have set forth above.

At the outset, petitioner is met with a challenge to his standing here. Section 24(a) of the Act provides: "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission or unless there were reasonable grounds for failure so to do." The Commission conducted public hearings with respect to these plans, which, as it says, consumed approximately twenty-three days, and at which petitioner neither appeared nor was represented. The transactions authorized were consummated, so it is said, some three weeks before filing of the petition for review. Petitioner now says that the statutory purpose to prevent surprise was fulfilled when the Commission itself recognized and considered the objections, adding that he relied on the Commission "to decide questions of law in accordance with the statute."

 There is no question but that the statutory provision states an important and a desirable limitation on review of agency orders. Only recently the Supreme Court has had occasion to stress the Congres-

sional purpose that "all controversies of fact, and the allowable inferences from the facts, be threshed out, certainly in the first instance, before" the agency. N. L. R. B. v. Cheney California Lumber Co., 66 S.Ct. 553, 555. See also Pacific Gas & Electric Co. v. S. E. C., 9 Cir., 127 F.2d 378; American Power & Light Co. v. S. E. C., 1 Cir., 141 F.2d 606, 612, certiorari granted 325 U.S. 846, 66 S.Ct. 1400, 89 L.Ed. 1968; Todd v. S. E. C., 6 Cir., 137 F.2d 475, 478. The desirability of the provision being so apparent, an appellate court should be assiduous in avoiding review of matters which have not received consideration by the Commission.

 There is more doubt, however, where the matter has been carefully considered by the agency, and review is sought by some person of interest, but a stranger to the administrative proceedings. Should the right of review be limited to those personally appearing, thus discouraging the waste and delays of appeals by persons lacking sufficient incentive to oppose initially; or should the right be considered more general, as held derivatively on behalf of a group? Perhaps we do not need to rule definitively on this issue here. For the statute does not in terms make this a limitation on jurisdiction to hear the petition; rather it is a mandate to be observed by the reviewing court in the exercise of its admitted jurisdiction, with a certain amount of discretion allowed to determine if there were "reasonable grounds" for the failure to make the objection below. It seems not inappropriate for us to consider the lack of objection here as excused because of the Commission's own actions in examining the issue involved and to decide the case upon the merits, especially as decision there seems to us quite clear.

 On the merits, petitioner stakes his position upon certain broad generalities of the Act. Thus he cites § 10(c) (2) that the Commission shall not approve the acquisition of securities of a public utility or holding company unless it finds such acquisition in the public interest "by tending towards the economical and efficient development of an integrated public-utility system"; § 11(b) (2), the general requirement

for simplification of holding-company systems by such steps as the Commission "shall find necessary"; and § 11(e) that the Commission shall approve a submitted plan when it finds the plan "necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by" it. He says that no such finding can be made, since "the new company is not to be integrated with Niagara but divorced from it," and that this is a risk of $63,000,000 for the purchase of additional utility securities with an increased concentration of assets in a forbidden investment. He then adds eloquently that the question is whether the end justifies the means. "In Anglo-American jurisprudence it has never been authoritatively held that a lawful goal may be reached by illegal means."

If this were the final definitive order of simplification at the end of the difficult task set for the Commission by the statutory mandate, there would be force in what petitioner says. But, of course, it is only a step, and, so far as we can see, a limited step, along the road. There is nothing in the Act which says every order must be an all-or-none one, and that strict compliance with the ultimate objective must be forced at once—as if that were even remotely possible, in view of the intricacy of these huge financial structures. Rather has it been recognized throughout that the Commission's task was a delicate one, that a principal reason for its creation was "to secure the benefit of special knowledge acquired through continuous experience in a difficult and complicated field," in short, that the Commission should act its role of technical expert, rather than that of mere policeman, restricted only to shaking his billy at possible offenders. S. E. C. v. Associated Gas & Electric Co., 2 Cir., 99 F. 2d 795, 798; Douglas, Democracy and Finance, 1940, 43. Outside of his deductions from the statutory generalities, petitioner points to no direct injury to himself or other stockholders, and nothing to suggest that they will not be in fact benefited, as apparently they assume by their failure to object or seek review.

Of course we are in no position to assess the wisdom or the shrewdness of the steps taken, though we are bound to state that there is certainly nothing on the surface to suggest that they are not canny. Certainly we must have a better base than the statutory generalizations to justify us in denying all discretion here to the Commission in circumstances where both expertness and wisdom are so greatly called for.

Order affirmed.