PHILLIPS v. SECURITIES AND EX-
CHANGE COMMISSION et al.

No. 10470.

United States Court of Appeals
District of Columbia Circuit.

Decided Nov. 9, 1950.

Mr. Randolph Phillips, pro se. Mr. Joseph B. Hyman, Alexandria, Va., of the Bar of the Supreme Court of the United States, pro hac vice, by special leave of Court, for petitioner.

Mr. Roger S. Foster, General Counsel, Securities & Exchange Commission, Washington, D. C., for respondent.

Mr. John J. Burns, Boston, Mass., of the Bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Mr. James K. Polk, New York City, was on the brief, for intervenor The United Corporation. Mr. Richard Joyce Smith, New York City, of the Bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, for intervenor.

Before WILBUR K. MILLER, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The petition before us seeks relief based essentially on the contention that the Securities & Exchange Commission has failed to act with proper diligence and dispatch in bringing about the dissolution of United Corporation, a company registered under the Public Utility Holding Company Act of 1935. 49 Stat. 803, 15 U.S.C.A. § 79 et seq.

The petitioner, a stockholder of United Corporation, raises this contention in the following context: On August 14, 1943, after hearings, the Commission issued an order requiring United (1) to cease to be a holding company, (2) to reduce its capitalization to one class of stock, and (3) to proceed to comply with the order with due diligence. The Commission did not determine, in this order, the details of the manner in which United should effectuate compliance.[1] Nor did it determine the major question whether United was to be dissolved, or be permittted to reorganize and become an investment company—the latter course being the one advocated by United's management.

After the entry of the 1943 order, United took a series of steps in the direction of compliance. It simplified its capital structure by buying up and otherwise extinguishing its preferred stock; since April 30, 1949, it has had only a single outstanding class of stock (the common, of which petitioner is a holder). United also divested itself of a number of its subsidiaries. As of April 30, 1949, there remained two companies, Niagara Hudson Power Corporation and South Jersey Gas Company, of which United held more than the statutory level of ten per cent of the voting securities. Act § 2(a) (7).

The present proceeding for review attacks an order which the Securities & Exchange Commission issued on October 20, 1949, relative to United's holdings in Niagara Hudson Power Corporation. In June 1949 United brought before the Commission a proposal to distribute to United's stockholders one share of common stock of Niagara Hudson Power Corporation for each ten shares of United. It would appear that United then held 2,818,397 shares of Niagara Hudson common, and 48,529 shares of preferred, approximating 28.5 per cent of the total voting stock. On October 20, 1949, the Commission issued its order approving the proposed distribution; in consequence, 1,442,973 shares of Niagara Hudson common and $158,401 in cash were distributed to the common stockholders of United. This reduced the figure of 28.5 per cent of control to approximately 14.1 per cent.[2] In attacking the order of

---

1. See 13 S. E. C. 854 for the text of the Commission's opinion, issued with the order.

2. Later, on February 9, 1950, the Commission ordered United to exchange its remaining Niagara Hudson stock for

October 20, 1949, petitioner accepts the principle of distributing Niagara Hudson shares, but objects because the amount of the distribution was not greater. He advocated a distribution twice as large as the one ordered on October 20, 1949; such a distribution would, of course, have taken United completely out of the Niagara Hudson field. Among other things, his petition requests this Court to compel the larger distribution.

United Corporation, which has intervened in this proceeding, states that it has no desire to continue to retain even as much as a ten per cent interest in the voting securities of Niagara Hudson, or in South Jersey Gas Company. On November 16, 1949, it filed with the Commission a plan which would transform it into an investment company. United states that its plan was filed not only as a further compliance with the 1943 order but also in compliance with a condition which the Commission inserted in the order of October 20, 1949 (here under review), that United "file, promptly as its next step under the Commission's order of August 14, 1943, a comprehensive plan under Section 11(e) of the Act, detailing the remaining steps to be taken, and the timing thereof, to complete its transformation into an investment company." The comprehensive plan, says United, will provide for the prompt reduction below the ten per cent level of United's holdings of voting securities of Niagara Hudson and South Jersey Gas Company, and a further program of reduction which at the end of five years would bring its holdings of any public utility company or utility holding company below a five per cent level. Hearings were commenced on this plan on January 24, 1950, and Mr. Phillips, the petitioner here, has participated therein.

As has been indicated, petitioner asks us to modify the Commission's order of October 20, 1949, so as to direct immediate distribution in kind to the common stockholders of United of an additional block of shares of Niagara Hudson. He also asks that the October 20 order be modified so as to compel the management of United Corporation "to complete in all other respects no later than 3 months hereafter *full* compliance with the Holding Company Act." (Petition, par. 4) (Emphasis added). His brief makes clear what he has in mind in this regard; the first prayer of its concluding paragraph is that "The order of the Commission dated October 20, 1949 should be modified or set aside in such part as to require the Commission to enforce forthwith *the plan of petitioner.* * * *" (Br., 46) (Emphasis supplied). He sets forth in full the plan of reorganization advocated by him (App., 56); essentially it provides for immediate distribution to United's stockholders of all the Niagara Hudson stock in the portfolio, and the sale on the open market within three months of all United's remaining investments in its statutory subsidiaries.

## I.

In considering the issues thus raised, we must recall that the Holding Company Act of 1935 does not require that a registered company divest itself instantly and completely of every share of a public utility in which it holds more than ten per cent of the voting securities. As the Supreme Court has pointed out, " * * * the compromise bill which became law omitted the unconditional provision of § 11(b) (3) for the elimination of all holding companies within five years, substituting therefor the 'great-grandfather clause' of § 11(b) (2), and gave the Commission discretion to determine the necessary steps for compliance instead of specifying reorganization or dissolution. * * * The Commission is the body which has the statutory duty of considering the possible solutions

stock in Niagara Mohawk Power Corporation, a new operating company in the same system, so that United now holds approximately 13.4 per cent of the voting securities of Niagara Mohawk. It seems admitted by all parties that an order increasing the distribution of shares, as sought by petitioner, could be effectively carried out in one way or another, if issued, in spite of the action taken as a result of the February 9, 1950, order of the Commission, under which United now holds Niagara Mohawk shares. The issue therefore is not moot, and will be discussed as if the exchange had not taken place.

and choosing that which it considers most appropriate to the effectuation of the policies of the Act. Our review is limited solely to testing the propriety of the remedy so chosen from the standpoint of the Constitution and the statute." American Power Co. v. Securities & Exchange Commission, 329 U.S. 90, 115, 118, 67 S.Ct. 133, 147, 91 L.Ed. 103.

Reading of the Act as a whole shows that simple destruction of holding companies was not what Congress had in mind. Instead, Congress was interested in the protection of the vast number of investors who during the boom years had suffered by being induced to purchase shares in holding companies, without obtaining either adequate information or an adequate degree of representation or control. Other congressional objectives were, of course, to bring about more effective regulation of operating utility companies and holding companies, and better service to users of utility products and services. To this end, Congress provided for the registration of holding companies, and for their continued regulation. And, through the operation of section 11 of the Act, Congress intended to bring about a simplification of those companies, the elimination of abuses, and the creation of better integrated and better regulated systems—followed by continued regulation in every case where a registered holding company was permitted to remain in existence.[3]

Section 11(b) of the Act provides that the Commission shall enter an order "as soon as practicable after January 1, 1938", requiring each registered company (1) to limit its operations to a single system; and (2) to take steps to insure that the continued existence of any company in the system does not "unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company

system." Then, in section 11(c), the statute goes on to provide that "Any order under subsection (b) shall be complied with within one year from the date of such order", and it further directs the Commission on proper request by a registered company to extend such time "for an additional period not exceeding one year". Section 11(d) authorizes the Commission to apply to a court to enforce compliance with any order issued under subsection (b). Section 11(e) authorizes a registered holding company to submit a plan for compliance with subsection (b), and provides mechanism for Commission approval; if the plan is so approved, the Commission is authorized, upon request of the company, to seek court enforcement.

The Commission has not made application under section 11(d) for court enforcement of its 1943 order. Nor, apparently, has petitioner sought by mandamus or like process to compel the Commission to resort to the courts under section 11(d). He alleges, rather, that the Commission has not obeyed the Congressional mandate for expeditious reorganization of holding companies, pointing to the passage of time since the promulgation of the 1943 order. He contends that the 1943 order, under the Act, must now be construed to require—and be enforced so as to bring about—the immediate dissolution of United. To this end he offers his own plan of compliance.

The 1943 order did not set up a plan for detailed action by United, nor require that compliance be completed before a particular date. It rather established certain general objectives for United to carry out "with due diligence." One of these objectives, the simplification of its capitalization, has been achieved; United now has only one class of stockholders. The other objective, that United "cease to be a holding company," has in large part been carried out, since it has reduced its holdings below

3. For discussions of the operation and effect of the Act, see Ely, The Holding Company Overhaul Now Half Completed, 41 Pub.Util. Fortnightly 410 (1948); Comment, Section 11(b) of the Holding Company Act: Fifteen Years in Retrospect, 59 Yale L.J. 1089 (1950). For a recent case in which a Commission or-

der enforcing dissolution was upheld as against the protests of stockholders, see Protective Committee for Class A Stockholders of Int'l Hydro-Electric System v. S. E. C., decided by the 2nd Circuit October 24, 1950, 19 U.S.L. Week 2815 (Nov. 7, 1950).

the ten per cent level in all but two cases. And the order of October 1949 makes clear the Commission's desire that United promptly file a final plan of reorganization; the Commission's approval of the partial distribution of Niagara Hudson shares is made conditional upon such a filing.[4] Progress of this sort is not lightly to be undone by a forced interpretation of the statute.

In our view, the Act neither compels nor justifies the conclusion the petitioner asks us to reach. Sections 11(c) and 11(d) were designed to enable the Commission to deal with a recalcitrant company. But Congress could hardly have intended that an order entered by the Commission should become a trap closing down relentlessly at the end of a two-year period, against the judgment of the Commission, contrary to the provisions of the order entered, and to the damage of the very interests which Congress was endeavoring to protect—the public interest and that of investors. To give any such interpretation to the statute might well tend to cause the Commission to refrain from issuing any order in a particular case until the situation became ripe for complete and immediate enforcement.

## II.

There is no showing that the precise plan of distribution set up by the order here in issue, that of October 20, providing one share of Niagara Hudson for every ten shares of United, was not adopted in good faith, or that it was not a proper administrative device for insuring ratable distribution. With regard to petitioner's own interest in the distribution, we cannot find that the order would result in any inequity or discrimination. It is true that piecemeal plans do ordinarily involve additional expenses of administration, but we cannot conclude from this that piecemeal plans are forbidden and are never to be adopted. "There is nothing in the Act which says every order must be an all-or-none one, and that strict compliance with the ultimate objective must be forced at once—as if that were even remotely possible, in view of the intricacy of these huge financial structures." Phillips v. Securities & Exchange Commission, 2 Cir., 156 F.2d 606, at page 609. The mechanics of distribution were within the Commission's discretion, and there has been no showing that this discretion was abused.

## III.

Petitioner has developed a plan of his own, described earlier, for the reorganization of United, and urges us to order its adoption. We do not desire to comment on its merits, for they are not before us. Congress intended to have the utility holding company problem worked out as far as possible through plans of reorganization, voluntarily framed and voluntarily adopted.[5] But it charged the company's management with primary responsibility

4. While the Commission speaks of the filing of a comprehensive plan which will complete United's "transformation into an investment company," we do not regard this as a decision by the Commission against dissolution and in favor of the formation of an investment company. The Commission's actions taken as a whole, including its statement that there has been no "final determination of whether and on what terms United will become an investment company" (Holding Company Act Release No. 9431, p. 6), and its decision to allow Phillips to "explore all issues" in the reorganization proceedings (id. at pp. 7–8), indicate that dissolution may still be ordered if other alternatives (such as the company's plan) are not found acceptable.

5. Mr. Justice Rutledge, in his concurring opinion in American Power Co. v. Securities & Exchange Commission, 329 U.S. 90, 67 S.Ct. 133, 151, said:

"I do not think that § 11(e) simply provides a procedure alternative to that of § 11(b) which the Commission is free to follow or disregard at its pleasure. Both the terms of the Act and the legislative history show that the purpose of §.11(e) was to allow companies affected 'to work out a plan of reorganization to make unnecessary the issuance of an involuntary order for its reorganization * * *,' which could only be issued under § 11(b). S.Rep.No.621, 74th Cong., 1st Sess., 33; Commonwealth & Southern Corp. v. Security & Exchange Commission, 3 Cir., 134 F.2d 747, 751."

for the preparation of such plans.[6] The Act contains no express provision for submission of a plan by a security holder except under section 11(d), which applies to judicial enforcement of compliance with SEC orders. 15 U.S.C.A. § 79k(d). Even in that section the Commission is given power to make rules and regulations as to the submission of plans. The time and place to consider petitioner's plan of general dissolution of the company, assuming for present purposes his "right" to be heard,[7] would appear to be along with a plan of reorganization submitted by the company.

 Petitioner also challenges the failure of the trial examiner (in the hearings prior to the issuance of the October 20 order) to permit him to ask certain questions, namely, "what steps United proposed to take in the future to effect compliance with the 1943 order; why it [United] was not proposing to make additional distribution of securities at this time;" what is "the (present and prospective) value of the option warrants;" and what are "the probable tax losses in connection with the disposition of portfolio securities." (Petitioner's Br. p. 21.)

These questions all concern the general problem of United's future, and the steps it should take to comply with the Act and the 1943 order. As such, they would appear to be more relevant to the proceedings which are now taking place, i. e., the proceedings on United's proposed plan of reorganization, than to the narrower problem which was before the Commission in regard to the distribution of Niagara Hudson shares. The Commission so found.[8] Any failure by the Commission to recognize substantial rights in the reorganization proceedings will be subject to appropriate judicial review.

The Commission's order of October 20, 1949, is

Affirmed.

6. In Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 91, 63 S. Ct. 454, 461, 87 L.Ed. 626, the Supreme Court said:
"The Act vests in the officers and directors of a holding company registered under the Act broad powers as representatives of all the stockholders. Besides the Commission, only the management can initiate a proceeding before the Commission to simplify the corporate structure and to effect a fair and equitable distribution of voting power among security holders. Only the management can amend a plan under §§ 7 and 11(e), and this it may do at any time; only the management can withdraw the plan, and this too it may do at will; and even after the Commission has approved a plan, it cannot be carried out without the consent of the management."

7. It has been held that one so situated has no "right" to be heard in proceedings under the Act. Okin v. Securities Exchange Comm., 2 Cir., 1944, 143 F. 2d 960. The Act provides that in hearings before the Securities & Exchange Commission, the Commission "may admit as a party any representative of interested consumers or security holders, or any other person whose participation in the proceedings may be in the public interest or for the protection of investors or consumers." 15 U.S.C.A. § 79s. There may, of course, be instances where denial of an opportunity to be heard would violate the due process clause; in such case, despite the permissive language of the Act, intervention would be a right. See American Power Co. v. Securities & Exchange Comm., 329 U.S. 90, 106–110, 67 S.Ct. 133, 91 L.Ed. 103.

8. See the Commission's opinion accompanying the order of October 20, 1949. Holding Company Act Release No. 9431, at pp. 7-8.