516 F.2d 711
 170 U.S.App.D.C. 118, Fed. Sec. L. Rep. P 95,252
 ASSOCIATION OF MASSACHUSETTS CONSUMERS, INCORPORATED, Petitioner,
v.
UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Respondent,
New England Electric System Bay State Gas Company, Intervenors.
 No. 74-1325.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 27, 1975.
Decided July 24, 1975.
 
 James F. Fairman, Jr., Washington, D. C., with whom Allan S. Hoffman and Worth Rowley, Washington, D. C., were on the brief, for petitioner.
 Grant G. Guthrie, Sp. Counsel, Securities and Exchange Commission, with whom David Ferber, Sol., and Paul Gonson, Associate Gen. Counsel, Securities and Exchange Commission, were on the brief, for respondent.
 Richard B. Dunn was on the brief for intervenor New England Electric System. Thomas M. Debevoise, Woodstock, Vt., also entered an appearance for intervenor New England Electric System.
 Douglas W. Hawes, J. Michael Parish and Eugene R. Fidell, Washington, D. C., were on the brief for intervenor Bay State Gas Co. Harry H. Voigt, Washington, D. C., also entered an appearance for intervenor Bay State Gas Co.
 Before RICHARD T. RIVES,* Senior Circuit Judge for the Fifth Circuit, and McGOWAN and WILKEY, Circuit Judges.
 RIVES, Senior Circuit Judge:
 
 
 1
 Without a hearing, the Securities and Exchange Commission (Hereafter referred to as "Commission") approved the final step in compliance with its order requiring the New England Electric System ("NEES") a statutory holding company under the Public Utilities Holding Company Act of 1935 (15 U.S.C. § 79) (hereinafter the Act) to divest itself of all ownership in gas utility companies. The Association of Massachusetts Consumers, Inc. ("AMC"), an intervenor in the proceedings before the Commission, challenges the actions of the Commission. We find that the Commission did not abuse its discretion and affirm its disposition of this case.
 
 
 2
 The controversy culminating in the present proceeding began over 18 years ago. In 1957, NEES held stock in a number of electric and gas utility companies serving New England. In that year, the Commission began proceedings, under section 11 of the Act (15 U.S.C. § 79k), against NEES. The following year the Commission declared NEES' electric utility holdings to be an integrated system. (See § 2 of the Act, 15 U.S.C. § 79b). Six years later, the Commission ordered NEES to divest itself of the gas utility stock.[1] In 1968, after protracted litigation, the Supreme Court and the First Circuit affirmed the order.[2] In December, 1971, with approval of the Commission, NEES sold its stock in four of the gas utilities.[3] The following year NEES sought Commission approval of a plan to sell to the Boston Gas Company, an operating subsidiary of the Eastern Gas System, the assets of three utilities (plus another company related to those utilities), whose corporate shells would thereafter be dissolved. In a separate application, NEES also proposed to sell to Springfield Gas Light Company its Lawrence Gas Company stock.[4] The plan required minority shareholders, whose holdings totaled 10% of the stock, to sell their stock to Springfield at the same price received by NEES. Springfield would then merge into its subsidiary, the Northampton Gas Light Company. The surviving company would change its name to Bay State Gas Company, and would hold all of the Lawrence stock.
 
 
 3
 Two petitions to intervene in the proceedings were filed by AMC (1) in the Eastern proceedings to ratify the sale of the assets of the three utilities to Boston Gas, and (2) in the Bay State proceedings to ratify the sale of the Lawrence stock to Bay State. AMC moved that the Commission consolidate the proceedings and conduct a hearing. The Commission did not act upon AMC's motion, but it did allow AMC limited participation in the Eastern proceedings. Following the hearings in those proceedings, a settlement among the parties was reached, and the Commission approved the sale to Boston Gas. At about the same time, the Massachusetts Public Utility Commission held a public hearing on the proposed sale of the Lawrence stock to Springfield and the merger of Springfield into Northampton to form Bay State. The record of those hearings reveals no participation by AMC. The Massachusetts Commission approved the plan. On October 31, 1973, the Commission issued a memorandum opinion approving the sale of the Lawrence stock to Springfield and denying AMC's motion. The Commission denied AMC's request for reconsideration. AMC appeals to this Court, pursuant to § 24(a) of the Act (15 U.S.C. § 79x(a)).
 
 
 4
 The question before this Court is whether the Commission abused its discretion in refusing to consolidate these proceedings with the Eastern proceedings and in denying a hearing on the original motion or on the motion for reconsideration.
 
 
 5
 The law is clear concerning judicial review of an administrative body's refusal to consolidate two proceedings.
 
 
 6
 "No principle of administrative law is more firmly established than that of agency control of its own calendar. Practical problems of calendar administration confront an agency whenever related applications are pending at the same time. Consolidation * * * and similar questions are housekeeping details addressed to the discretion of the agency and, due process or statutory considerations aside, are no concern of the courts."
 
 
 7
 City of San Antonio v. C. A. B., 126 U.S.App.D.C. 112, 374 F.2d 326, 329 (1967) (footnotes omitted). Consolidation would have needlessly delayed resolution of the Eastern proceedings. The failure to consolidate prejudiced none of AMC's rights in either proceeding. The Commission's refusal to consolidate the proceedings was a sound exercise of necessary discretion.
 
 
 8
 On appeal, AMC submits that, contrary to the Commission's determination, three issues required a hearing:
 
 
 9
 (1) the possible anti-competitive effects of the sale of Lawrence to a member of the "Tenney" group;(2) the possible application of sections 9(a)(2) and 10 (15 U.S.C. § 79i(a)(2) and § 79j) to the sale of Lawrence to Springfield;
 
 
 10
 (3) the possible violation of the statute by NEES's submission of a voluntary plan for divestiture more than two years after the divestiture order became effective.
 
 
 11
 AMC must show more than that these were issues which the Commission could have considered. In addition, AMC must show that it presented them in compliance with the Commission's procedural rules. Rule 9 of the Commission's Rules of Practice, 17 CFR 201.9, requires that an intervenor state specifically the issues whose resolution requires a hearing. The published notice in the instant case called AMC's attention to that requirement. By timely motion, NEES complained that AMC was not in compliance with Rule 9.
 
 
 12
 AMC's compliance with the published notice was incomplete. It ignored NEES's motion, even though AMC's motion to intervene was vague as to the issues to be raised at any hearing. It did mention NEES's long delay in disposing of its gas utility stock and expressed suspicion about the fairness of the procedure by which NEES sought bids for the stock. In a letter, copy of which was appended to the motion, the president of AMC stated that the instant application raised "many of the same objections * * * raised against the proposed sale (in the Eastern proceedings)" (Emphasis supplied) (App. 156). Those three statements gave the only definition of the issues which AMC desired to explore in a hearing. AMC did not state that the Commission ignored any anti-competitive effects from the sale to Springfield,[5] nor did it argue that section 9(a)(2) governed this sale. It was only after the sale had been approved and on a petition for rehearing that AMC introduced those two issues.
 
 
 13
 The requirement that the intervenors specify the issues which demand a hearing serves important purposes. It enables the Commission to screen out frivolous requests for hearings and efficiently conduct hearings. Here, where the subject matter is so complex, poorly framed issues could turn the hearings into a maze in which justice could be lost. The strict application of those procedural rules seems appropriate here, where the intervenors were clearly on notice that they must comply with Rule 9. Nevertheless, since the intervenors argued that they represent important public interests, out of an abundance of caution we construe their pleadings so as to protect those interests and consider all issues referred to in their original petition. We follow the same course in reviewing the issues mentioned in AMC's petition for reconsideration.
 
 
 14
 After showing that reference was made to an issue in its original petition for a hearing, AMC must show that the resolution of the issue required a hearing and that the denial by the Commission was an abuse of discretion. AMC bears an even heavier burden as to the issues first raised in its petition for reconsideration. Only a clear abuse of discretion warrants reversal for failure to grant a request for a rehearing. See United States v. Pierce Auto Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); United States v. I. C. C., 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970). At the very least, the latter standard requires AMC to show that a potential issue was present and the hearing would have helped resolve it.
 
 
 15
 An issue mentioned in the original petition was whether the Commission erred in allowing NEES to submit a voluntary plan for divestiture five years after the divestiture order became effective. AMC submits that, under section 11(c) (15 U.S.C. § 79k(c)), a holding company has no more than two years in which to comply with a divestiture order. AMC asks that the Commission's approval of the sale be vacated and that the Commission be directed to proceed pursuant to section 11(d) (15 U.S.C. § 79k(d)). Phillips v. Securities and Exchange Commission, 87 U.S.App.D.C. 380, 185 F.2d 746, 750 (1950) speaks to this question.
 
 
 16
 "Sections 11(c) and 11(d) were designed to enable the Commission to deal with a recalcitrant company. But Congress could hardly have intended that an order entered by the Commission should become a trap closing down relentlessly at the end of a two-year period, against the judgment of the Commission, contrary to the provisions of the order entered, and to the damage of the very interests which Congress was endeavoring to protect the public interest and that of investors. To give any such interpretation to the statute might well tend to cause the Commission to refrain from issuing any order in a particular case until the situation became ripe for complete and immediate enforcement."
 
 
 17
 Although NEES was slow in complying, within the two years it did make some progress by creating a subsidiary, the Massachusetts Gas System, to hold the gas utility stock. That progress and the Commission's satisfaction with the final plan are enough to satisfy the requirements of the Act.
 
 
 18
 Another issue mentioned in the original petition was whether NEES maintained competitive conditions in soliciting bids for the stock. On appeal, AMC challenges the propriety of transferring the Commission's findings on that issue from the Eastern proceedings to the present one. We think that use proper. Since NEES solicited bids for all the utilities as a part of the same transaction, the circumstances of soliciting both bids were identical. Furthermore, AMC was not denied an opportunity to shape the record, for it participated in the hearing in the Eastern proceedings. The only complaint that AMC can make is that it would have tried harder in the Eastern hearing if it had known that that would be the only hearing. The Commission need not hold a hearing to gain information which has already been gathered. An administrative body may "mold its procedures to the exigencies of the particular case," Gulf States Utilities Co. v. Federal Power Commission, 411 U.S. 747, 762, 93 S.Ct. 1870, 1880, 36 L.Ed.2d 635 (1973). Moreover, "(T)he mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result." United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 530, 66 S.Ct. 687, 695, 90 L.Ed. 821 (1946). AMC fails to show why the findings in the Eastern proceedings were wrong, or that the use of those findings was prejudicial. The findings were supported by substantial evidence and, clearly, there was no abuse of discretion.
 
 
 19
 An issue which AMC raised for the first time in its petition for reconsideration was whether the sale would have anticompetitive effects. AMC contends that Springfield, the purchaser, belongs to an interstate group of gas and electric utilities known as the "Tenney" group. Those utilities have the same chief executive officer a Mr. Tenney and have in common several Board of Director members and officers. The Tenney family owns between 5 and 15% of the stock in each company. Although AMC concedes that the "Tenney" group does not fit within the statutory definition of a holding company, it argues that the Public Utilities Holding Company Act requires the Commission to ensure that any divestment will promote the objectives of the Act. In short, AMC asks this Court to hold that, even though the Commission could not order the "Tenney" group to sell the Lawrence stock if any were owned, it must forbid the group to buy any of the Lawrence stock. We find it unnecessary to resolve that issue. To prevail at a hearing on the matter, AMC would have to show that, although the "Tenney" group was not a statutory holding company,[6] it was a source of the same abuses and vices which led the Congress to enact the Public Utilities Holding Company Act. See § 1, 15 U.S.C. § 79a. Elimination of common officers and directors in noncompeting utility companies was not the precise purpose of the Act. AMC makes no allegation that the "Tenney" group is the source of any evils set forth in section 1 of the Act (15 U.S.C. § 79a). AMC having failed to show that there would have been substantial issues raised at the hearing even if its interpretation of the Act were correct (a question we do not reach), we find that the Commission did not abuse its discretion in refusing to vacate its approval of the sale.
 
 
 20
 The remaining issue raised in the petition for reconsideration was whether this transaction fell within the ambit of section 9(a)(2) of the Act (15 U.S.C. § 79i(a)(2)) and, hence, required Commission approval (see § 10 of the Act, 15 U.S.C. § 79j). Since Springfield merged into Northampton after it had bought the Lawrence stock, for an instant there were three entities Northampton, Lawrence and Springfield. Thus, AMC argues that Springfield, which was already an affiliate of Northampton, was buying the stock of a utility company. Section 9(a)(2) forbids such a purchase without Commission approval. The Commission concluded that the merger of Springfield into Northampton was so closely related to the sale that the transaction should be viewed as one in which Northampton, a company without an affiliate, obtained the Lawrence stock. We find the Commission's reasoning persuasive. In assessing interrelated corporate adjustments, comparison should be made of the situation just prior to and immediately following the adjustments. The sequence of relatively simultaneous corporate adjustments whose order has no practical effect do not govern the applicability of section 9(a)(2). The same result would not obtain where the sequence of corporate adjustments had a harmful effect on investors or the public.
 
 
 21
 Finding no reversible error, we affirm the judgment of the Commission.
 
 
 22
 Affirmed.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970)
 
 
 [1]
 NEES transferred its stock to a subsidiary, the Massachusetts Gas System. The latter held the stock until the divestment could be completed
 
 
 [2]
 See New England Electric System, 41 SEC 888 (1964), affirmed initially, SEC v. New England Electric System, 384 U.S. 176, 86 S.Ct. 1397, 16 L.Ed.2d 456 (1966), reversing, 346 F.2d 399 (1st Cir. 1965), affirmed on second appeal, SEC v. New England Electric System, 390 U.S. 207, 88 S.Ct. 916, 19 L.Ed.2d 1042 (1968), reversing, 376 F.2d 107 (1st Cir. 1967). See also Holding Company Act Release No. 16618, Feb. 24, 1970 (App. 107-108)
 
 
 [3]
 Central Massachusetts Gas Co., Norwood Gas Co., Wachusett Gas Co. and Northampton Gas Co
 
 
 [4]
 Although the two proposed sales were to be made to different purchasers, bids were solicited by copies of the same letter. There was no difference in the bidding procedure in the two cases. The sales became separate proceedings after NEES had determined the highest bidders
 
 
 [5]
 It is true that in the Eastern proceedings AMC objected to the purchaser and stated that the Bay State sale was subject to "many of the same objections." Since any potential anti-competitive effects from the sale to the particular buyer stemmed from facts peculiar to each case, the Commission could not have surmised that, though the circumstances of the buyer in each case were entirely different, AMC wanted to transfer this particular objection from the Eastern proceedings to the Bay State proceedings. The reasonable interpretation was to the contrary
 
 
 [6]
 See the definition of holding company in section 2 of the Act, 15 U.S.C. § 79b